0IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BARBARA FELDMAN and
EDWARD FELDMAN, her husband,

    Plaintiffs,                                      CASE NO.: 3:19-cv-419-MMH-PDB

v.

TARGET CORPORATION,
a Foreign Profit Corporation,

    Defendant.
_____/

## MOTION FOR SUMMARY JUDGMENT

    Defendant, Target Corporation, by and through its undersigned attorneys and pursuant to Rule 56(a), Federal Rules of Civil Procedure, moves for entry of summary judgment on the basis that there is no genuine dispute as to any material fact and that Target Corporation (hereinafter "Target") is entitled to judgment as a matter of law. As grounds for this motion Target would show as follows:

    1.    On April 16, 2018, the Plaintiff, Barbara Feldman, tripped and fell on an open and obvious store fixture at the Target Store located on Southside Boulevard in Jacksonville. She agreed this fixture was easy to see. She admitted she saw it before her accident. The undisputed evidence demonstrates she safely walked around this fixture no less than four times in the minute before her accident. See Exhibits 5 through 8 of Traci Campbell's deposition, and store video excerpt filed separately herein.

    2.    The fixture involved was a metal corner guard which protected the endcap display from damage by Target employees as they traverse about the store with larger carts distributing

1

merchandise. Photographs of the corner guard where marked as exhibits to Ms. Feldman's deposition and she acknowledged this was the guard involved in her accident. (Dep. Feldman p. 58) Earlier that morning while shopping, Ms. Feldman had passed by this corner one or two times. She admitted that she saw the corner guard on those trips, <u>before</u> her accident. (Id. p. 51) This line of questioning continued as follows:

> "Q. And you had seen the guard, you said, at least once earlier that morning…
>
> A. Yes.
>
> Q. …when you were in the store?
>
> A. Yes.
>
> Q. And it was easy for you to see earlier that morning, the guard?
>
> A. As I was passing it.
>
> Q. It was easy to see?
>
> A. Yes."

(Id. p. 57).

3. Ms. Feldman explained that she did not see the corner guard just before her accident because her shopping cart obstructed her view of the guard. Her testimony was as follows:

> "Q. Why did you not see it in the moments before your accident?
>
> A. Because I was pushing the cart and felt I had had enough clearance to go through.
>
> Q. So, are you saying that you did not see the silver guard and by the way this silver guard is on the corner of the endcap; correct?
>
> A. Yes.

Q. You're saying you did not see this silver guard just before your accident?

A. No.

Q. Because you were pushing the cart?

A. Yes.

Q. Did the cart or anything in the cart obstruct your view of the silver guard?

A. I think so.

Q. Why do you say that?

A. Because the cart is wider and I was going around the corner and thought I had cleared enough.

…

Q. Let me ask you the question this way: If you had not been pushing the cart if you had just been walking…

A. Oh, I would have seen it.

Q. You would have seen the guard?

A. Uh-huh.

Q. Yes?

A. Yes.

…

Q. You told me a moment ago that if you were just walking without a cart you would have seen the guard.

Q. Do you remember telling me that?

A. Yes.

>   Q. So why is it that you believe you would have seen the guard if you were walking without the cart?
>
>   A. Because I didn't have a…because I didn't have a buggy right in front of me.
>
>   Q. Okay.
>
>   A. And like I said, I was quite certain I'd cleared that with plenty of room."

(Id. pp. 52, 53, 54, 56, and 57)

    4.     The store surveillance video, filed separately herein, depicts the accident of Ms. Feldman. The store video shows that Ms. Feldman was <u>not</u> pushing her shopping cart at the time of the accident. Thus there was nothing obstructing her view of the corner guard which she had already seen. She was well aware of it. In fact, the store video actually shows Ms. Feldman passing directly by this corner guard no less than four times in the minute before her accident. (See store video excerpt and Exhibits 5 through 8 of Traci Campbell deposition).

    5.     Based upon the undisputed evidence in this case, Target is entitled to summary judgment because the corner guard was an open and obvious condition already seen or observed by Ms. Feldman before her accident, which she inexplicably tripped over causing her own injury. She knew the location of the corner guard and had passed directly beside it several times in the moments before her accident. Target has a right to assume that Ms. Feldman will perceive that which would be obvious to her upon the use of her ordinary senses, and in this case it is undisputed she was aware of the corner guard, having seen it before her accident. Target could not reasonably have anticipated that Ms. Feldman would trip over a corner guard she had previously observed and safely walked around multiple times before her accident. Since the condition was so open and obvious, Target owed no duty to warn Ms. Feldman of the presence of the corner guard.

**MEMORANDUM OF LAW**

In *Brookie v. Winn Dixie Stores, Inc.*, 213 So.3d 1129 (Fla. 1st DCA 2017), the Court affirmed a summary judgment in a trip and fall case. In *Brookie* the plaintiff went to Winn Dixie to purchase items and obtain empty boxes. He made a total of four trips into and out of the store. A vendor of Winn Dixie was delivering beer to the store which was stacked five feet high on a pallet between the store's entrance and exit doors. There was an empty pallet sitting on a pallet jack's prongs to the right of the exit. As Brookie was making his third trip going out of the store he saw the empty pallet, but tripped and fell over it suffering injuries. He sued Winn Dixie for negligently failing to warn of the dangerous condition and failing to make the sidewalk safe to walk across. Brookie produced an affidavit from his expert opining that Winn Dixie created an unsafe condition. There was video surveillance of the incident. Most importantly Brookie testified that he did not notice the empty pallet until his third trip going out of the store and claimed he tripped over the prongs of the pallet jack protruding from underneath the pallet, as opposed to the pallet itself. The trial court granted summary judgment to Winn Dixie on the duty to warn claim because Brookie was aware of the condition. The trial court also found the condition to be so open and obvious that it was not inherently dangerous as a matter of law, thus absolving Winn Dixie of liability.

Citing the Florida Supreme Court case of *Earley v. Morrison Cafeteria Co. of Orlando*, 61 So.2d 477 (Fla. 1952), the Court emphasized that it was "well settled that the proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his senses." Citing *Ramsey v. Home Depot USA, Inc.*, 124 So.3d 415 (Fla. 1st DCA 2013), the Court noted there was no duty to warn against an open and obvious condition which is not inherently dangerous.

Ultimately the Court held that Winn Dixie did not violate any duty to Mr. Brookie, who had observed the condition but was injured because he failed to use due care for his own safety when a reasonable person could have easily avoided the obstacle.  Brookie saw the empty pallet when he left the store and took four more steps before tripping over it.  Although Brookie contended that he tripped over the prongs of the pallet jack, the video footage showed that he actually tripped over the pallet itself.  The Court agreed with the trial court that it was actually immaterial whether he tripped over the prongs or the pallet, since both were open and obvious conditions.  Brookie knew the location of the pallet, since he had seen it twice earlier, before the accident.  Winn Dixie had no greater knowledge of the condition than Mr. Brookie and therefore no duty to warn him.

In addition to finding no duty to warn, the Court went on to hold, as a matter of law, that there was no breach of any duty to maintain the walkway in a reasonably safe condition.  Citing *Denson v. SM-Planters Walk Apartments*, 183 So.3d 1048 (Fla. 1st DCA 2015), the Court stated that some conditions are so obvious and not inherently dangerous that as a matter of a law they are not a dangerous condition.  An example of this would be a difference in floor levels even in dim lighting.  *Denson* also noted that other conditions may be dangerous, but they are so open and obvious that an invitee should be expected to discover them and protect himself.  The Court observed that there two types of obvious conditions that will not constitute a breach of a duty to maintain the premises.  One of these is where the condition is so open and obvious that it is not inherently dangerous.  Alternatively, even if the condition is dangerous, it may be so open and obvious that an invitee should reasonably be expected to discover it and protect himself. The Court stated that even assuming the pallet's location was dangerous, it was so open and obvious, and previously observed by Mr. Brookie, that Winn Dixie should expect Brookie to protect himself

6

from the alleged danger.  The Court referred to multiple other cases from the State of Florida involving falls from open and obvious conditions.

     Ultimately the *Brookie* Court stated:

> Appellant's action of walking right into the pallet, not an inherently dangerous condition and one that he had previously and contemporaneously observed twice before, was the sole proximate cause of his injuries.  It is neither "probable nor foreseeable" that someone seeing a pallet on the ground, and having passed by it twice before, would fail to avoid the open and obvious condition.  The standard must be based on an objective evaluation, understanding that every case will involve an accident, which could not by itself mandate that summary judgment never be granted in cases involving open and obvious conditions.
>
> We would also hold here that even if the pallet's location was inherently dangerous, which is was not, that summary judgment was properly granted, because Appellant saw the alleged dangerous condition, which was so open and obvious, that he could be "reasonably expected to discover [the pallet] to protect himself."
>
> …
>
> As we discussed above, the Florida Supreme Court held that a "proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his senses."  Here, this is precisely the case, as Appellant saw the purported dangerous condition but failed in the "ordinary use of his senses" to avoid the observed condition.
>
> To reverse the summary judgment here would make business owners universal insurers.  Business owners receive shipments of products every day, which must be stored somewhere before placement, and if a customer sees the placement of the products but trips and falls over them, the customer, or invitee, has violated his own duty to exercise reasonable care for his own safety.

213 So.3d at 1134, 1135 (citations omitted).

The Court went on to note that the pallet was not a foreign substance on the floor, but a legitimate aspect of a retail business. This is much the same as the legitimate business purpose of the corner guard here to protect the corner of the endcap. Interestingly, the Court also referred to this Court's decision in *Arnoul vs. Busch Entertainment Corp.*, 2008 WL 4525, 106 (MD Fla. October 6, 2008). In *Arnoul,* this Court entered summary judgment for the Defendant again under circumstances similar to this case. Plaintiff Arnoul was visiting Busch Gardens. He was walking on a walkway with a low hanging tree branch that extended over the pedestrian walkway. He saw this when he was about 12 feet away. The branch protruded out over the walkway about five-and-a-half feet. As he continued to walk, he looked down in response to a question from his granddaughter and walked directly into the branch, causing him to fall. The Plaintiff alleged that because of the crowded pedestrian walkway, and the park's visual distractions, including small children, this type of obstruction is unreasonably dangerous. The Defendant's position was the tree branch was open and obvious and therefore it had no duty to remove it or warn visitors of its presence.

Citing several Florida cases, the Court noted that some conditions are so open and obvious that as a matter of law they do not give rise to any liability. The Court stated that a condition is not unreasonably dangerous when its obviousness would lead a reasonable person to avoid the danger. Some conditions, as a matter of law, are so open and obvious that they are not dangerous. Plaintiff's argument that his attention would be diverted from the overhanging branch with landscaping designed to lure his eyes away was refuted by his own testimony that he saw the branch before he walked into it. Others were able to see the branch and clearly avoid it. This Court noted that "there is no premises safe enough to entirely foreclose the risk that a guest might injure himself during an inattentive moment." This is clearly the same here, where Ms. Feldman

walked back and forth around the corner of the endcap several times in the seconds before her accident, but undoubtedly was inattentive when she tripped on the same endcap on her fourth pass. Also here, like Mr. Arnoul, Ms. Feldman admitted she saw the corner guard before her accident. Ultimately, the *Arnoul* Court stated,

> There is no premises safe enough to entirely foreclose the risk that a guest might injure himself during an inattentive moment. The law allows landowners to maintain, within reason, natural and visible diversity and to trust the invitees will use their common sense to avoid obvious potential injury by not walking into trees, for example. The Court is not prepared to dispense with the duty of care to oneself, the exercise of which others are entitled to depend upon.
>
> Some degree of risk can be anticipated no matter the environment. The law does not find fault with men for not futilely endeavoring to change this immutable fact, but recognizes that allowing some degree of risk will always be reasonable. Plaintiffs have presented no evidence attempting to show that the branch posed any more than this type of obvious, easily avoidable, reasonable danger.

Likewise here the corner guard "protruded" into Ms. Feldman's walkway about 2 ½ inches, yet she had over five feet of walkway available to her so that she could easily pass around it (which she safely did several times in the seconds before the accident). Consistent with several other courts in Florida, the *Arnoul* Court concluded by indicating there would be no duty to warn of the tree limb when this condition was open and obvious to the Plaintiff.

One of the many cases cited in the *Arnoul* decision was *Crawford vs. Miller*, 542 So. 2d, 1050 (Fla. 3d DCA 1989). In that case, summary judgment at the trial court level was affirmed on appeal. The Plaintiff, Gloris Crawford, was a housekeeper for the Defendant. She was informed of and had seen Malibu lights in the shrubbery along a front sidewalk on the Defendant's property. A month after these were installed, she tripped and fell on one of these lights, contending that the top of the light protruded over the edge of the sidewalk. She claimed there was an overgrowth of shrubbery just above the light which obscured the light's location and created a dangerous

condition.  The Court found the condition was open and obvious and there was no dispute that the Plaintiff was aware of the existence of the lights.  The mere occurrence of the accident, without more, did not give rise to any inference of negligence.

Just like the Plaintiffs in *Brookie*, *Arnoul*, and *Crawford*, Ms. Feldman acknowledged that she had been by the same area of her accident one or two times before the accident.  She saw the metal corner guard on those trips.  (Dep. Feldman p. 51).  She testified that she did not see the corner guard at the time of her accident because her vision was obstructed by her shopping cart.  (Id. p. 52).  If she had <u>not</u> been pushing her cart, she testified unequivocally that "I would have seen it."  (Id. p. 54).  The video of the incident demonstrates, without dispute, that Ms. Feldman was <u>not</u> pushing her shopping cart at the time of the accident.  She left it some distance away.  In fact, she had walked back and forth next to this corner guard at least four times within a minute of the accident.  On all of those occasions, she never tripped, she safely walked around the corner guard, and had ample space to do so.  Even Ms. Feldman's hired expert, Traci Campbell, admits that the corner guard was easy to see, and thus an open and obvious condition.  (Dep. Campbell pp. 48, 60, 61.)  The photographs attached to this motion demonstrate the open and obvious nature of this corner guard.  (See Exhibits 1 through 3A of Ms. Feldman's deposition, and Exhibits 3, 4 and 17 of Traci Campbell's deposition).

Target is not an insurer of the safety of Ms. Feldman as she traverses about in the store.  She is charged with the duty to observe that which is easy to see, or open and obvious.  She in fact saw this guard before her accident, passed by it numerous times safely without incident, and her one inattentive moment does not give rise to any liability on the part of Target.  For these reasons, Target is entitled to summary judgment.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail to Barry B. Ansbacher, Esquire and Davarian T. Rousseau, Esquire, Ansbacher Law, E-mail: barry.ansbacher@ansbacher.net, davarian.rousseau@ansbacher.net, teresa.gipson@ansbacher.net, elaine.willison@ansbacher.net, lisa.knight@ansbacher.net and alawpleadings@gmail.com this 16th day of April, 2020.

        SAALFIELD SHAD, P.A.

        /s/ *William T. Stone*
        WILLIAM T. STONE
        Florida Bar No. 263397
        wstone@saalfieldlaw.com
        rcarter@saalfieldlaw.com
        245 Riverside Avenue, Suite 400
        Jacksonville, Florida 32202
        Telephone: (904) 355-4401
        Facsimile: (904) 355-3503
        *Attorneys for Defendant*