United States District Court
Middle District of Florida
Jacksonville Division

**BARBARA FELDMAN,**

> *Plaintiff,*

v.                                                    **No. 3:19-cv-419-PDB**

**TARGET CORPORATION,**

> *Defendant.*

---

## Omnibus Order

Barbara Feldman alleges that, while shopping at Target, she tripped over a corner guard, fell, and injured herself. At a trial beginning on June 22, 2021, a jury must decide her claim that Target breached a duty to maintain the store in a reasonably safe condition. The Court earlier granted summary judgment on her claim that Target breached a duty to warn, ruling the corner guard is open and obvious. Doc. 79 at 9, 11; Doc. 81 at 2.

This omnibus order addresses motions in limine (many, for an action defense counsel described as "about the simplest case I can remember trying in a very long time"). Finding oral argument on the motions unnecessary, the Court **denies** the request for oral argument. Doc. 111. This order also addresses the jury questionnaire proposed by the parties.

# I.  Law

## A.  *Governing Law*

In a federal diversity action, state law governs substantive issues, and federal law governs procedural issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because procedural rules include evidentiary rules, the Federal Rules of Evidence apply. *McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004). Still, some "state evidentiary rules are substantive in nature, and transcend the substance-procedure boundary." *Id.* at 1295.

## B.  *Federal Rules of Evidence*

### 1.  *Purpose*

The Federal Rules of Evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102.

### 2.  *Discretion*

A district court has wide discretion in determining the admissibility of evidence under the Federal Rules of Evidence. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

### 3.  *Motions in Limine*

"In limine" is defined as "'[o]n or at the threshold; at the very beginning; preliminarily.'" *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (quoting Black's Law Dictionary 708 (5th ed. 1979)). In a broad sense, the term means

"any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Id.* "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Id.* at 41 n.4.

"Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b). Thus, a party need not renew an objection to evidence when the court has definitively ruled on the party's motion in limine. *Cephus v. CSX Transp., Inc.*, 771 F. App'x 883, 890 (11th Cir. 2019) (cited authority omitted). Still, an in limine ruling can be changed as the case unfolds at trial—or even if nothing unexpected happens at trial. *See, e.g.*, *Luce*, 469 U.S. at 41–42.

4. *Relevancy*

With some exceptions, relevant evidence is admissible, and irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

5. *Unfair Prejudice, Confusion, Misleading, Undue Delay, Etc.*

A court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This

rule is an "extraordinary remedy" that a court "should invoke sparingly," with the "balance … struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (cleaned up). The rule "requires a court to look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quoted authority omitted).

"[D]emonstrative evidence, like any evidence offered at trial, should be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *United States v. Gaskell*, 985 F.2d 1056, 1060 (11th Cir. 1993) (quoting Fed. R. Evid. 403).

## 6.    *Judicial Notice*

A "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[T]he court must instruct the jury to accept the noticed facts as conclusive." Fed. R. Evid. 201(f); *see* Eleventh Circuit Pattern Jury Instructions (Civil) 5.2 (2020) ("The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this 'judicial notice.' I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.").

## 7.    *Leading*

"Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should

allow leading questions: (1) on cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c).

## 8. *Hearsay*

Hearsay "means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A statement by and offered against an opposing party is not hearsay. Fed. R. Evid. 801(d)(2)(A).

Hearsay generally is not admissible. Fed. R. Evid. 802. As an exception, a "statement in a learned treatise, periodical, or pamphlet" is admissible if "the statement is called to the attention of an expert witness on cross-examination or relied on by the expert in direct examination" and "the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice." Fed. R. Evid. 803(18).

## 9. *Expert Testimony*

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid.

704. "Unless the court orders otherwise, an expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination." Fed. R. Evid. 705.

"[A]n expert may rely on hearsay evidence as part of the foundation for his opinion so long as the hearsay evidence is the type of evidence reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 809 (11th Cir. 2017) (internal quotation marks omitted); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) ("Unlike an ordinary witness, … an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.").

## 10. *Summary Evidence*

A party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. "The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." *Id.* "And the court may order the proponent to produce them in court." *Id.*

## C. *Federal Rules of Civil Procedure*

## 1. *Goal*

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just,

speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

2.     *Expert Disclosures*

A party must disclose to the opposing party the identity of any expert witness it may use at trial to present evidence. Fed. R. Civ. P. 26(a)(2)(A). The purpose of the rule is to provide the opposing party with a reasonable opportunity to prepare effective cross-examination and decide whether to arrange the party's own expert testimony. *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1361–62 (11th Cir. 2008). An expert opinion elicited on re-direct examination is not exempt from the disclosure requirement; "[a]n expert opinion is an expert opinion." *English v. D.C.*, 651 F.3d 1, 13 (D.C. Cir. 2011).

If an expert witness "is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the party must include with the disclosure a signed report that must contain six items, including "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and "the witness's qualifications, including a list of all publications authored in the previous 10 years." Fed. R. Civ. P. 26(a)(2)(B).

If an expert witness is not required to provide an expert report, the disclosure must state "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). This requirement "is considerably less extensive" than the report required for a retained expert, and

"[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Fed. R. Civ. P. 26(a) advisory committee's note to 2010 amendment. The witness may testify as both a fact witness and provide expert testimony. *Id.*

Disclosures must be made at the "times and in the sequence that the court orders" or, if not ordered, "at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. P. 26(a)(2)(D).

"If a party fails to provide information … as required … the party is not allowed to use that information … to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *accord Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1341 (11th Cir. 2020). The rule "provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment.

The rule-breaking party has the burden of showing substantial justification or harmlessness. *Knight*, 856 F.3d at 812. "Substantially justified" means "reasonable people could differ as to the appropriateness of the contested action." *Id.*[1]

---

[1]The meaning of "harmless" is less clear. The ordinary meaning is "free from harm, liability, or loss." Merriam-Webster, www.merriam-webster.com/dictionary/harmless (last visited June 17, 2021). Advisory committee notes suggest non-compliance is harmless only if the non-compliance was a mistake and the information was already known. Fed. R. Civ. P. 37 advisory committee's note to 1993 Amendment; *see Crawford*, 977 F.3d at 1353 (Tjoflat, J., dissenting); *see also Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 607–08 (11th Cir. 2019) (Tjoflat, J., dissenting) (same). Other circuits continue to apply pre-Rule 37(c)(1), judicially created, non-exhaustive factors to determine substantial justification or

### 3. Depositions at Trial

A party may object at trial "to the admission of any deposition testimony that would be inadmissible if the witness were present and testifying." Fed. R. Civ. P. 32(b). An objection "to the competence, relevance, or materiality of testimony … is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time." Fed. R. Civ. P. 32(d)(3)(A).

### 4. Compulsory Medical Examination

A court may order a party "whose mental or physical condition … is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a). If an examination is made by the parties' agreement, the rule specifies requirements for providing examination reports. Fed. R. Civ. P. 35(b).

---

harmlessness. *See, e.g., Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 117 (2d Cir. 2020); *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1201 (10th Cir. 2017). Those factors are the explanation for the failure, the importance of the witness's testimony, the need for time to prepare to respond to the testimony, and the possibility of a continuance. *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. 1981); *accord Alimenta (U.S.A.), Inc. v. Anheuser-Busch Cos., Inc.*, 803 F.2d 1160, 1163 (11th Cir. 1986).

The Eleventh Circuit, without discussion of the effect of Rule 37(c)(1), has applied the factors to hold a district court did not abuse its discretion in excluding testimony of a belatedly disclosed witness, but in the same opinion applied Rule 37(c)(1) without the factors to hold the district court did not abuse its discretion in excluding the testimony of three expert witnesses because their reports failed to comply with the Rule 26(a)(2)(B) requirements. *See Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1321, 1323 (11th Cir. 2008).

The Court need not decide the meaning of "harmless" to decide the motions in limine here and therefore declines to do so.

**D.** **_Florida Law_**

*1.* *Collateral Sources*

Florida law provides that in an action "in which liability … is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources[.]" Fla. Stat. § 768.76(1).

The "dual functions of the collateral source rule are to be harmonized: although evidence that may confuse the jury as to both liability and damages should not be admitted, … any potential windfalls to the plaintiff that might occur through the exclusion of such evidence are minimized by judicial reductions to the damage award by any collateral source, which occurs outside of the jury's presence." *Joerg v. State Farm Mut. Auto. Ins. Co.*, 176 So. 3d 1247, 1255 (Fla. 2015).

Under Florida law, a plaintiff may introduce into evidence and request from the jury the gross amount of her medical bills, rather than the lesser amount paid by a private health insurer in full settlement of the medical bills. *Nationwide Mut. Fire Ins. Co. v. Harrell*, 53 So. 3d 1084, 1086 (Fla. 1st DCA 2010).

Whether state law concerning collateral sources is procedural or substantive for choice of law purposes depends on the particulars of the state law. *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1300–01 (11th Cir. 2018).

## 2.    *Future Medical Expenses*

"Florida law restricts recovery of future medical expenses to those expenses 'reasonably certain' to be incurred." *Volusia Cnty. v. Joynt*, 179 So. 3d 448, 452 (Fla. 5th DCA 2015). For recovery, a plaintiff therefore must "establish, through competent, substantial evidence, that future medical expenses will more probably than not be incurred." *Id.*

"[M]edical testimony is not required as a prerequisite to a jury instruction on future damages." *Sullivan v. Price*, 386 So. 2d 241, 244 (Fla. 1980). When an expert opines about future medical expenses, "whatever qualification is placed on the opinion by the expert (i.e., surgery is possible or likely) goes to the *weight* of the opinion, and not its *admissibility*." *White v. Westlund*, 624 So. 2d 1148, 1151 (Fla. 4th DCA 1993) (emphasis in original); *accord Fitzsimmons v. Biomet Orthopedics, Inc.*, No. 2:19-cv-182-FtM-29NPM, 2020 WL 6784236, at *13 (M.D. Fla. Nov. 18, 2020). Accordingly, "a medical expert may testify that future medical procedures are 'possible' or 'likely,' and need not phrase an opinion in terms of such surgery or treatment being 'reasonably necessary.'" *White*, 624 So. 2d at 1151; *see also Shearon v. Sullivan*, 821 So. 2d 1222, 1225–26 (Fla. 1st DCA 2002) (holding that if a doctor opines that future medical care and costs would be necessary to a reasonable degree of medical probability, then any qualification placed on the opinion goes to the weight of the opinion).

## II.    Analysis

### A.    *Life Tables*

Feldman moves for judicial notice of the life table for white women in the National Vital Statistics Reports, Vol. 68, No. 7, June 24, 2019—Table 6. Doc. 61.

At the final pretrial conference, the Court **granted** the motion to the extent the Court—subject to foundation and relevancy, *see* Doc. 70—will judicially notice that the Centers for Disease Control and Prevention provides the statistical data in the life table. That fact can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

### B.    *Summary of Medical Bills*

Feldman provides notice of her intent to use a summary of medical bills she incurred. Docs. 64, 96, 96-1, 123, 123-1.

At the final pretrial conference, the Court construed the notice as a motion and **granted** it to the extent Feldman can use a summary of medical bills she incurred. Considering the number of bills and the detail in them, the medical bills cannot be conveniently examined in court. *See* Fed. R. Evid. 1006. Addressing Target's response to the motion, the summary must accurately reflect all evidentiary rulings. *See* Doc. 71.

### C.    *Incident at Talbots*

Feldman moves for an order excluding evidence of, or reference to, any prior claim or litigation by her, identifying only an incident at Talbots and

contending the evidence is unfairly prejudicial, will confuse the issues, and will mislead the jury. Doc. 62.

At the final pretrial conference, the Court **denied** the motion for the reasons stated in Target's opposition to the motion. *See* Doc. 69. The evidence relates to the cause of Feldman's left-shoulder injuries and her belief about the cause of the injuries. As Target stipulates, its counsel must not reference the amount of the Talbots settlement or describe Feldman as litigious. *See* Doc. 69 at 3.

## D.    Record of "Near Miss" Incidents

Target moves for an order excluding evidence that Target tracks "near miss" incidents or evidence of these "near miss" incidents, contending the evidence is not relevant, will confuse the issues, and will waste time. Doc. 72 at 2, 6–8; Docs. 73, 73-1.

The Court **grants** the motion for the reasons stated in the motion. *See* Doc. 72 at 2, 6–8. Feldman's opposition is unpersuasive, particularly since the "open and obvious" issue is no longer in the case. *See* Doc. 75 at 7–8. According to the corporate representative's testimony, the tracking collects data from employee reports of equipment hitting fixtures and the like—not from customer reports of tripping and the like. Moreover, there is no evidence the tracking was done or capable of being done when Feldman fell.

## E.    Prior Incidents

Target moves for an order prohibiting Feldman from introducing evidence of two prior incidents in the last four years in which guests tripped on a corner guard in a northeast Target store, contending the incidents are

dissimilar and therefore not relevant and unfairly prejudicial. Doc. 72 at 2–3, 9–10.

The Court **denies** the motion for the reasons stated in Feldman's opposition to the motion. *See* Doc. 75 at 8–12; Doc. 75-1. Feldman's incident is substantially similar to the prior incidents. They therefore relate to notice and safety. Prejudice, if any, does not "substantially" outweigh the probative value of the evidence. *See* Fed. R. Evid. 403 (quoted).

## F.   *Walmart's Corner Guards*

Feldman moves for an order prohibiting use of, or reference to, photographs of corner guards at Walmart, contending Target failed to comply with disclosure requirements and can show neither substantial justification nor harmlessness and, moreover, the photographs are not relevant, are unfairly prejudicial, and would confuse and mislead the jury. Doc. 99.

Target acknowledges it disclosed the photographs too late and states it will not use them. Doc. 110 at 2. The Court **denies** the motion, Doc. 99, as moot.

## G.   *Time to Repair Labrum*

Feldman moves for an order prohibiting testimony about, or reference to, the time it took treating physician Dr. Kevin Murphy to repair her labrum during surgery, contending his testimony is speculative. Doc. 98; *see* Doc. 95-2 p. 54, ln. 2–p. 55, ln. 2.

The Court **denies** the motion for the reasons stated in Target's opposition to the motion. Doc. 110 at 7–9. Viewed in context (including that Dr.

Murphy—a doctor board-certified in orthopedic surgery—performs these types of repairs and spent thirty-eight minutes to perform eight procedures), the testimony is not speculative. *See* Doc. 95-2 at 18–19 (Dr. Murphy's testimony). Feldman is free to emphasize that Dr. Murphy qualified his testimony.

## H.    *Recoverable Medical Expenses*

Target moves for an order prohibiting Feldman from "boarding" or "claiming" medical expenses she has no obligation to pay because of private health insurance, contending the expenses are not relevant and will mislead the jury into believing she has significant expenses she must pay. Doc. 72 at 2, 10–13; Doc. 74; *see also* Doc. 71 (Target's response in opposition to Feldman's notice of her intent to use a summary of medical bills she incurred, Doc. 64). Target explains the amount she has no obligation to pay is $98,312.93, while the amount she has an obligation to pay is $18,305.79. Doc. 71 at 1–2; *but see* Docs. 123-1 (second amended summary of medical expenses).

The Court **denies** the motion. Florida law in this area is substantive in nature. *See Joerg*, 176 So. 3d at 1255; *see also McDowell*, 392 F.3d at 1295. Under that law, Feldman may introduce into evidence and request from the jury the gross amount of her medical bills, subject to later reduction by the Court.[2] *See Harrell*, 53 So.3d at 1086. Target remains able to challenge medical expenses as unreasonable or unnecessary. Target remains able to request a special verdict. Instruction 501.8 of the Florida Standard Jury Instructions in a Civil Case is available if warranted.

---

[2]Even under the Federal Rules of Evidence, the evidence relates—at a minimum and however slightly—to the extent of Feldman's injuries.

## I.     Feldman's Testimony to Avoid a Directed Verdict

Target moves for an order prohibiting Feldman from testifying that she was distracted by merchandise, contending the testimony conflicts with prior testimony and would be offered solely to conform the testimony to expert testimony of Traci Campbell and to avoid judgment as a matter of law. Doc. 94 at 6, 19. The Court **denies** the motion for the reasons stated in Feldman's opposition to the motion. Doc. 113 at 16–17. Target provides no authority extending the rule prohibiting sham affidavits in the summary judgment context to prohibit assertedly sham testimony in the trial context. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1530 (11th Cir. 1986) (explaining when a court may disregard an affidavit as a sham). Moreover, whether Feldman was distracted by merchandise was not unambiguously asked and answered during her deposition. The jury, not the Court, must resolve whether she is credible.

## J.     Provision of Video Evidence

Target moves for an order prohibiting Feldman and Campbell from testifying or suggesting Target improperly withheld the video of the incident, contending the testimony is not relevant, is unfairly prejudicial, would confuse the issues, and would mislead the jury. Doc. 94 at 6–7.

The Court **grants** the motion for the reasons stated in the motion, Doc. 94 at 6–7, to the extent Feldman and Campbell must not testify or suggest that Target improperly withheld the video of the incident. Responding to Feldman's opposition to the motion, this ruling does not prohibit her from testifying she did not possess the video before she sat for her deposition, she therefore had not watched the video before she sat for her deposition, and her recall during the deposition was affected thereby. *See* Doc. 113 at 18.

## K.    *Campbell's Testimony*

The Court previously ruled Campbell is qualified, is reliable, and can potentially help the jury. Doc. 79 at 14–15. The Court ruled she may testify that:

- ▪"The initiating motion in this trip and fall accident was Ms. Feldman's right foot striking an object at the end of the aisle that abruptly halted her forward motion and caused her to become unbalanced and fall to the ground. More likely than not, the object that Ms. Feldman struck was a metal floor level endcap corner guard." Doc. 57-1 at 70 (opinion 2).

- ▪"Given the lack of outward motion observed by Ms. Feldman's left foot at the time she starts to leave the aisle, Ms. Feldman was standing close to the outer edge of the endcap. This is also confirmed by Ms. Feldman's left foot continuing forward without appearing to strike anything and her not falling on the endcap fixture itself, instead striking the floor." Doc. 57-1 at 70 (opinion 3).

- ▪"The overall design of the subject endcap area exhibits a number of factors that can negatively impact someone's ability to successfully navigate the aisleway including:

    a. Lack of a floor stripe corresponding with the outer edge of the endcap as seen on the opposite end of the subject aisle.

    b. Glare from overhead lighting reflecting off the Vinyl Composite of the floor.

    c. Endcap with pegboard and hooks display that lacked side guarding and did not extend to the outermost edge of the end cap[.]

    d. Use of metal corner guards on the corner of the subject endcap.

Doc. 57-1 at 70 (opinion 5).

- ▪ "The subject metal guard protrudes into the available pedestrian aisle by approximately 2.375 inches in each direction from the end cap. Doc. 57-1 at 70 (opinion 6).

▪"The metal guard's protrusion into the available pedestrian walkway is an inherently dangerous … trip hazard." Doc. 57-1 at 70 (opinion 7).

▪"The metal guards are not consistently located on the corners of each endcap in the store. They are only located on ends of some of the aisles." Doc. 57-1 at 71 (opinion 9).

▪"All of these factors, including the presence of the floor level metal corner guards, contributed to a foreseeably hazardous and unreasonably dangerous environment for Target's shoppers, including Ms. Feldman, and negatively impacted Ms. Feldman's ability to successfully walk through the subject aisles and around the subject endcap," Doc. 57-1 at 71 (opinion 10), to the effect that various conditions of the aisle walkway negatively impacted Feldman's ability to navigate the aisle.

Doc. 79 at 16–18; Doc. 81 at 2–3, 7–8.

The Court ruled Campbell must not testify that:

▪"At the time just prior to this incident, Ms. Feldman was shopping in a manner that was appropriate, foreseeable, and not negligent." Doc. 57-1 at 70 (opinion 1).

▪"Just prior to the incident, Ms. Feldman is engaged in shopping for merchandise and is looking ahead at the goods on the aisle in front of her. This is expected and foreseeable on the part of an active shopper." Doc. 57-1 at 70 (opinion 4).

▪"The metal guard's protrusion into the available pedestrian walkway is a … foreseeably hazardous trip hazard." Doc. 57-1 at 70 (opinion 7).

▪"The metal guards are located at floor height and not at a height that is easily seen by shoppers as they are looking at merchandise on the shelves in front of them." Doc. 57-1 at 70 (opinion 8).

▪"All of these factors, including the presence of the floor level metal corner guards, contributed to a foreseeably hazardous and unreasonably dangerous environment for Target's shoppers, including Ms. Feldman, and negatively impacted Ms. Feldman's ability to successfully walk through the subject aisles and around the subject endcap," Doc. 57-1 at 71 (opinion 10), to the extent she opines the corner guard's protrusion into the pedestrian walkway was foreseeably hazardous and that the aisle walkway was a foreseeably hazardous environment for shoppers.

Doc. 79 at 16–18; Doc. 81 at 2–3, 7–8.

Before those rulings, Target moved for an order prohibiting Campbell from offering legal conclusions, contending the testimony is unfairly prejudicial and not helpful. Doc. 72 at 1–6; *see also* Doc. 51 (Target's motion to strike Campbell's testimony). The Court **denies** the motion as moot in light of those rulings.

Target moves for an order prohibiting Campbell from providing opinion 5, contending the opinion is "tantamount to an opinion that the corner guard was not open and obvious, contrary to the previous ruling from the Court that the corner guard is open and obvious"; will confuse the issues; and will mislead the jury. Doc. 101.

The Court **denies** the motion. The conditions relate to whether Target breached the duty to maintain the store in a reasonably safe condition. The Court ruled Campbell can provide opinion 5 in the same proceeding in which the Court ruled the corner guard is open and obvious. *See* Docs. 79, 81. The opinion and the ruling are not at odds. As stipulated by Feldman, Campbell must not opine that the corner guard was not visible or was difficult to see. *See* Doc. 112 at 2.

Target moves for an order excluding Campbell's testimony regarding American Society for Testing and Material (ASTM) standards and various codes, observing she failed to mention any in her expert report and contending they are inadmissible hearsay, they are not binding, ASTM F1637-13 is inapplicable, and ASTM 1694-14 concerns only methodology. Doc. 72 at 6; Doc. 94 at 4–6, 13–16; Doc. 97 at 5–6; *see also* Doc. 57-1 at 7, 11, 33 (Campbell's affidavit describing the standards); *id.* at 74–79, 81 (Campbell's deposition in

which she answered questions by Target's counsel about the standards and codes).

The Court **denies** the motion. While the rules require a report to include "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them," Fed. R. Civ. P. 26(a)(2)(B), unclear is whether the rules require specificity of standards on which experts in the area usually rely, rendering any failure to include them substantially justified. *Cf. Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006) (holding an accountant could testify about generally accepted accounting principles even though he had failed to specify reliance on those principles in his report because accountants base their opinions on the normal general standards of their profession; the disclosure rule "contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."). Target's hearsay argument is unpersuasive. *See Knight*, 856 F.3d at 809. Target's remaining arguments are best incorporated into cross-examination.

Target moves for an order prohibiting Campbell from testifying that Feldman failed to see the corner guard because Feldman was distracted by merchandise, she forgot it was there, or she was walking too close to the corner guard, contending Feldman, in her own testimony, "refutes" those reasons. Doc. 94 at 6, 16–19. The Court **denies** the motion without prejudice to renewal at trial after the evidence develops.

## L. Dr. Murphy's Opinions

Target moves for an order prohibiting Dr. Murphy from testifying about these subjects, contending Feldman failed to comply with disclosure

requirements and some testimony is not relevant to Feldman's claim or is "speculative and conjectural":

-Feldman's fall at Target caused her injuries.

-Feldman's injuries are permanent.

-Feldman may need future medical care in the form of physical therapy, injections, and medication.

-A person's pre-existing tendonitis makes them more susceptible to injury from trauma.

-Trauma can aggravate existing shoulder arthritis.

-Arthritis can be accelerated after a surgical procedure.

Doc. 72 at 3, 13–15; Doc. 94 at 2–4; Doc. 94-1; Doc. 97; *see also* Doc. 70 at 2–3 (Target's response to Feldman's motion for judicial notice of the life table, Doc. 61).

The Court **denies** the motion. Feldman fairly disclosed the opinions when she disclosed her experts (and when Dr. Murphy testified).[3] *See* Fed. R. Civ. P. 26(a) advisory committee's note to 2010 amendment. Target's counsel had an opportunity to—and did—vigorously question Dr. Murphy about the details of his opinions when Dr. Murphy sat for his deposition and to record his trial testimony. *See* Docs. 72-1, 95-1, 95-2. The generic testimony relates to the character and scope of Feldman's medical conditions and prognosis. Regarding the disclosure, "consistent with" is not the same as "identical to." Target's remaining arguments—including Feldman's failure to disclose prior injuries to

---

[3]Both sides understand the case management and scheduling order to require expert disclosures by January 30, 2020, but the order actually required "expert reports" by that date. *See* Doc. 18. To the extent no deadline was provided for the disclosure of an expert not required to provide a report, the default 90-days-before-trial kicked in, and any timeliness argument by Target is without merit. *See* Fed. R. Civ. P. 26(a)(2)(D).

Dr. Murphy—are best left incorporated into cross-examination. Should evidence about future medical expenses be lacking when Feldman rests her case, Target can move for judgment as a matter of law on any claim for them.

## M.    Dr. Kasraeian's Opinions

Within a response to a motion, Feldman argues that if the Court excludes testimony of Dr. Murphy, the Court should exclude all testimony of Dr. Sina Kasraeian because Target failed to disclose him, failed to timely request the compulsory medical examination by him, and failed to provide his curriculum vitae. Doc. 113 at 13; *see also* Doc. 114, at 2, n.1 (Feldman's statement in footnote to a motion that she does not intend to waive the argument).

The Court is not excluding testimony of Dr. Murphy. In any event, to the extent Feldman requests an order excluding Dr. Kasraeian's testimony, the Court declines to consider the request because it is improperly imbedded in a response rather than presented in a motion with a memorandum of law. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion. The motion must … state with particularity the grounds for seeking the order[.]"); Local Rule 3.01(a) (specifying requirements for a motion). A memorandum of law is particularly important here because there may be open issues regarding the interplay between the expert disclosure rules and the rules concerning compulsory medical examinations and related reports.

## N.   *Objections*

The parties describe unresolved objections to questions asked during depositions. Docs. 114, 116; *see also* Doc. 66 (order permitting use of depositions at trial in lieu of live testimony). Feldman's motion on the same subject is **denied in part** as moot to the extent she withdraws objections. *See* Doc. 92 (Feldman's motion concerning leading objections).

### 1.   <u>Dr. Murphy's March 15 Video Deposition</u>

P. 13, ln. 16
Objections: foundation, causation opinion (Docs. 72, 97)
**Overruled**

P. 19, ln. 23
Objections: repetitive, demonstrative aid foundation, non-disclosure
**Overruled**

P. 21, ln. 18
Objections: repetitive, demonstrative aid foundation, non-disclosure
**Overruled**

P. 25, ln. 6
Objections: leading, causation opinion (Docs. 72, 97)
**Sustained (leading)**

P. 26, ln. 13
Objections: leading, non-specific and therefore not relevant (Doc. 97)
**Overruled**

P. 28, ln. 23
Objections: leading, non-specific and therefore not relevant (Doc. 97)
**Overruled**

P. 29, ln. 13
Objections: non-specific and therefore not relevant (Doc. 97)
**Overruled**

P. 30, ln. 2
Objections: leading, non-specific and therefore not relevant (Doc. 97)
**Overruled**

P. 31, ln. 20
Objections: leading, calls for speculation (Doc. 97)
**Overruled (on these objections)**

P. 31, ln. 23 – p. 32, ln. 19
Objections: leading, speculative future medical care (Doc. 97)
**Overruled**

P. 32, ln. 14-19
Objections: speculative future medical care (Doc. 97)
**Overruled**

P. 32, ln. 20–p. 33, ln. 4
Objections: permanency opinion (Doc. 97)
**Overruled**

P. 33, ln. 4
Objections: permanency opinion (Doc. 97)
**Overruled**

P. 33, ln. 16
Objections: leading, vague, overbroad
**Overruled**

P. 57, ln. 2-8
Objections: non-specific and therefore not relevant (Doc. 97)
**Overruled**

P. 57, ln. 22
Objections: leading, non-specific and therefore not relevant (Doc. 97)
**Overruled**

P. 58, ln. 15
Objections: narrative report
**Sustained**

P. 58, ln. 18 – p. 59, ln. 2
Objections: speculative future medical care (Doc. 97)
**Overruled**

P. 59, ln. 12–19
Objections: speculation, non-specific and therefore not relevant (Doc. 97)
**Overruled**

2.     **Dr. Murphy's March 15 Discovery Deposition**

P. 20, ln. 10–16
Objection: relevancy
**Overruled**

P. 31, ln. 23–p. 32, ln. 19
Objections: leading, speculative future medical care (Doc. 97)
**Overruled**

P. 32, ln. 21–p. 33, ln. 2
Objections: leading, non-specific and therefore not relevant (Doc. 97)
**Overruled**

3.     **Dr. Kasraeian's April 19 Video Deposition**

P. 12, ln. 9–22
Objection: speculation
**Sustained**

P. 22, ln. 2–13
Objection: leading
**Overruled**

P. 28, ln. 13–23
Objection: Hearsay
**Sustained**

P. 38, ln. 7–22
Objections: leading and hearsay
**Overruled**

P. 68, ln. 23–p. 69, ln. 8
Objections: improper pitting one expert against another, asking expert to give opinion about another expert's opinion
**Sustained**

## O.    Juror Questionnaire

Separately filed is the final juror questionnaire that will be provided to venire members when they arrive at the courthouse for jury selection. Some jointly proposed and individually proposed questions are omitted because they will be asked in open court (potential venire members will have little time to complete the questionnaires before entering the courtroom and including all the questions makes the questionnaire so lengthy as to risk overwhelming potential venire members). Some jointly proposed and individually proposed questions are omitted because the questions appear calculated not to select a fair and impartial jury but to select a jury favorable to one side or the other.[4] Counsel will have an opportunity to request additional questioning after the Court examines the potential jurors. *See* Fed. R. Civ. P. 47(a).

## III.    Conclusion

In advance of trial, the parties must (1) edit the video depositions of Drs. Murphy and Kasraeian to ensure they comport with the rulings in this order and (2) share the edited versions with opposing counsel.

Many of the arguments in the motions in limine include that the admission of particular evidence will be unfairly prejudicial, will cause jury confusion, or will mislead the jury. Either side may request a jury instruction, as warranted, to minimize any of these.

---

[4]Target provides no reason for its request to ask potential venire members whether and where they regularly attend a place of worship. *See* Doc. 117-1 at 5. Asking this question could inject into the case a religious-based issue where one is otherwise absent. If Feldman regularly attends a particular place of worship and Target is concerned fellow attendees might be in the venire, a more targeted question can be asked in the courtroom.

The parties have provided substantial briefing on the issues raised in the motions in limine, often repeating arguments, and the Court has carefully considered the briefing. The parties must be wary of "unjustifiable expense and delay" in deciding whether to reargue at trial any issue that has been definitively resolved in this order. *See* Fed. R. Evid. 102 (quoted).

**Ordered** in Jacksonville, Florida, on June 17, 2021.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*